IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

T. KEITH HOLLIS, PH.D.,

DENNIS W. SMITH, JR. PH.D.

TIMOTHY BODEN,

and

MARK MURPHY

     *Plaintiffs,*

vs.

Civil Action No. ___1:21cv163-GHD-RP___

JOSEPH R. BIDEN, JR.,
in his official capacity as
President of the United States of
America;

BOARD OF TRUSTEES OF THE STATE
INSTITUTIONS OF HIGHER LEARNING

MISSISSIPPI STATE UNIVERSITY

and

JOHN DOES 1 - 10   `

     *Defendants.*

---

## COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

---

COMES NOW, the PLAINTIFFS, T. KEITH HOLLIS, PH.D., DENNIS W. SMITH, JR, PH.D., TIMOTHY BODEN, and MARK MURPHY, by and through the undersigned counsel, and as and for their Complaint, states as follows, *to wit*:

## **INTRODUCTION**

> *"No — I don't think it [the COVID-19 vaccine]*
> *should be mandatory. I wouldn't demand it to*
> *be mandatory."*
>
> President-Elect Joseph Biden, Jr.
> December 4, 2020

1.     Notwithstanding his promise to the American people on December 4, 2020, that he would not make vaccines mandatory, President Joseph Biden announced on September 9, 2021, that vaccines would become mandatory for all Federal contractors and their employees. That day, the President also enacted Executive Order 14042, which requires Federal contractors to "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force …." (E.O. 14042, at § 2.)

2.     In defiance of this unconstitutional executive mandate, the Board of Trustees of the State Institutions of Higher Learning ("IHL") enacted guidance for the workforce at Mississippi State University ("MSU") and other schools on September 17, 2021, declaring that no employee of any state-sponsored institution of higher learning (including MSU) would have to be vaccinated against COVID-19.

3.     On September 24, 2021, the Safer Federal Workplace Task Force ("Task Force") enacted the *COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors* ("Task Force Guidance")[1] pursuant to Executive Order 14042. The Task Force Guidance mandates:

> Pursuant to this Guidance, and in addition to any
> requirements or workplace safety protocols that are
> applicable because a contractor or subcontractor employee is

---

[1] See **Exhibit 1**, incorporated herein by reference and made a part hereto.

present at a Federal workplace, Federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols:

1. COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation;

2. Compliance by individuals, including covered contractor employees and visitors, with the Guidance related to masking and physical distancing while in covered contractor workplaces; and

3. Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.

(Task Force Guidance, at p. 1.) When read in conjunction with Executive Order 14042, the Task Force Guidance mandates that all Federal contractors and their employees be vaccinated "except in limited circumstances." (Id.)

4. MSU is a well-respected research institution. According to its website, "MSU's research expenditures totaled nearly $241 million in FY 2017, accounting for more than half of the total in research and development expenditures reported by all Mississippi institutions." https://www.msstate.edu/research (retrieved October 26, 2021). Much of this research is through Federal contracts with the Department of Agriculture and other agencies of the Federal government. Therefore, MSU falls under the collective rubric of the Task Force Guidance and Executive Order 14042 in that it is a Federal contractor.

5. On October 25, 2021, the IHL changed its position to comply with Executive Order 14042. Fearing that schools like MSU would lose its Federal contracts, and thereby see its research potential devastated, the IHL implemented new guidance, stating that all employees at state institutions of higher learning, such as MSU, must be

fully vaccinated by December 8, 2021, or face immediate termination. However, the IHL ruled that its position on vaccines would revert to its September 17, 2021, guidance if Executive Order 14042 is repealed or declared to be unconstitutional. Therefore, the IHL has made it crystal clear: the October 25, 2021, order is not the product of any official policy of the State of Mississippi; rather, it is simply in place to comply with President Biden's unconstitutional vaccine mandate.

6.     Plaintiffs are employees of MSU who refuse to be vaccinated. Each of these gentlemen have had COVID-19 and believe that their natural immunity far surpasses the vaccines that are currently available. Moreover, because none of these vaccines have undergone long-term (five-years or more) testing, the Plaintiffs are concerned that the long-term ramifications of taking any of the vaccines may outweigh any marginal benefit that they would receive, especially since they have already beaten the virus.

7.     Although the Plaintiffs will address how natural immunity is superior to the pseudo-immunity offered by the vaccines presently on the market, they are especially concerned by the President's attempt to usurp the authority of the Congress, the States, and the people, by and through (1) his violation of the Separation of Powers Doctrine, (2) his decision to delegate executive authority to an agency not created by Congress, and (3) his usurpation of the Fourth, Fifth, Ninth, and Tenth Amendments to the United States Constitution.

8.     On October 26, 2021, MSU officials addressed its employees about the recent IHL order. At this meeting, they announced their intention to comply with the IHL order by terminating employees who are not fully vaccinated by December 8, 2021. Thus, MSU, being clothed with the duty of complying with the IHL order – which, in turn, is wholly

predicated upon Executive Order 14042 – has threatened and is about to commence the unlawful proceeding of enforcing said order. Cf. Okpalobi v. Foster, 244 F.3d 405, 416 (5th Cir. 2001) (describing how Eleventh Amendment sovereign immunity does not apply when the named State officials "have some connection with the enforcement of the act and threaten and are about to commence proceedings to enforce the unconstitutional act.") (Internal quotations omitted.)

9.     Therefore, the Plaintiffs seek a declaration from this Court pursuant to the Declaratory Judgments Act (28 U.S.C. §§ 2201–2202) and Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441 (1908) that Executive Order 14042, the Task Force Guidance, and the IHL's October 25, 2021, order are unconstitutional.

10.     Plaintiffs further seek to enjoin President Biden from enforcing Executive Order 14042 and the Task Force Guidance.  The Plaintiffs also seek to enjoin IHL and MSU from enforcing the IHL's October 25, 2021, order – and by extension – Executive Order 14042 and the Task Force Guidance.

## PARTIES, JURSIDICTION, AND VENUE

11.     The preceding paragraphs are incorporated herein by reference.

12.     Plaintiffs are adult resident citizens of Oktibbeha County, Mississippi, except that Mark Murphy is from Clay County, Mississippi.  Each Plaintiff is employed by MSU in various capacities.  Plaintiffs have not taken the COVID-19 vaccine.

13.     T. Keith Hollis, Ph.D. ("Dr. Hollis") is a full professor in the Chemistry Department.  He was a National Institutes of Health doctoral fellow from 1995 to 1998 in synthetic organic chemistry and medicinal chemistry.  His curriculum vitae is attached hereto as **Exhibit 2.**  Dr. Hollis explains the scientific basis for concluding that vaccine

efficacy is overstated in **Exhibit 3.** He has tenure at MSU. Dr. Hollis has recently been diagnosed with a cardiac condition. Unfortunately, he is not able to see a cardiologist until December of this year, making it problematic for him to get a timely medical exception to this vaccine mandate. Therefore, Dr. Hollis faces the Hobson's choice of having to choose between his health and his vested property right in his career.

14. Dennis Smith, Ph.D. ("Dr. Smith") is a full professor and head of the Chemistry Department. He has tenure at MSU. He is a current fellow of the American Chemical Society and the International Union of Pure and Applied Chemistry. His curriculum vitae is attached hereto as **Exhibit 4.**

15. Timothy Boden ("Mr. Boden") is a part-time lab director in the Chemistry Department. Mr. Boden has a cardiac condition.

16. Mark Murphy ("Mr. Murphy") is a research associate in the Forestry Department. He works on Federal contracts with MSU.

17. Thus, the Plaintiffs are, themselves, men of science and technology who can assess the risks and rewards of vaccination without the intrusive intervention of D.C. bureaucrats. Each Plaintiff has already had COVID-19.[2] In turn, each Plaintiff is believed to have antibodies in their respective systems, thereby making the addition of an mRNA vaccine[3] unnecessary. Furthermore, each Plaintiff has a vested property right (*i.e.*, their continued employment) and a vested liberty right (*i.e.*, freedom from being

---

[2] Dr. Hollis and Messrs. Boden and Murphy received diagnoses for COVID-19. Dr. Smith did not; however, he believes that he did have the virus as he exhibited the typical symptoms.

[3] Incidentally, the Plaintiffs do not believe that the so-called vaccines are true vaccines. Instead, they are therapeutics. However, to comply with common parlance, they will be referred to as "vaccines."

injected with an unnecessary vaccine) that the Defendants will take from them without due process of law unless this Honorable Court intervenes.

18.     Joseph R. Biden, Jr., is the President of the United States of America.  He is sued in his official capacity.

19.     The Board of Trustees of the State Institutions of Higher Learning ("IHL") is an agency of the State of Mississippi charged with the responsibility of managing the State's institutions of higher learning.

20.     Mississippi State University ("MSU") is a state-sponsored institution of higher learning.  MSU has directed all its employees to comply with the October 25, 2021, IHL order – and by extension – Executive Order 14042 and the Task Force Guidance on pains of termination.  MSU is located in Oktibbeha County, Mississippi.

21.     Jurisdiction is proper under Article III, Section 2 of the United States Constitution since the President of the United States is a named Defendant.  Moreover, jurisdiction is appropriate under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress for the deprivation of rights secured by the U.S. Constitution.  Similarly, Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

22.     Eleventh Amendment sovereign immunity is abrogated pursuant to Ex Parte Young, supra, since the Plaintiffs seek to prevent unconstitutional orders from being enforced by authorized persons who have expressed their intentions to enforce said orders.

23.   Venue is proper in the Northern District of Mississippi pursuant to 28 U.S.C. § 1391(e)(1) since an officer of the United States (i.e., President Biden) is being sued and at least one Defendant resides in this District.

## FACTUAL ALLEGATIONS

24.   The preceding paragraphs are incorporated herein by reference.

25.   On January 20, 2021, President Biden signed Executive Order 13991. Therein, the President establishes the aforesaid Task Force pursuant to the 5 U.S.C. § 7902 (c), which reads:

> The President may--
>
> **(1)**   establish by Executive order a safety council composed of representatives of the agencies and of labor organizations representing employees to serve as an advisory body to the Secretary in furtherance of the safety program carried out by the Secretary under subsection (b) of this section; and
>
> **(2)**   undertake such other measures as he considers proper to prevent injuries and accidents to employees of the agencies.

26.   The express language of § 7902 (c) limits the authority of any safety council to "serve as an advisory body to the Secretary [of Labor]."  Id; cf. § 7902 (b) (identifying "Secretary" as the Secretary of Labor).  Moreover, the advice such a safety council must be in "furtherance of the safety program carried out by the Secretary under subsection (b) of this section." § 7902 (c).  Subsection (b) of § 7902 mandates that the Secretary "carry out a safety program under section 941(b)(1) of title 33 covering the employment of each employee of an agency."  Thus, the sole statutory purpose of any safety council established pursuant to § 7902 (c) is to advise the Secretary of Labor as to how he may carry out a safety program for "the employment of each employee of an agency." § 7902 (b).

27.   By its express terms, 33 U.S.C. § 941 deals only with the safety rules and regulations for longshoremen and harbor workers.  This is because § 941 is found in Chapter 18 of Title 33 (which is entitled "Longshore and Harbor Workers' Compensation").  Since MSU's campus in landlocked Starkville, Mississippi is far removed from any coastline that would employ longshoremen, § 941 could hardly have any bearing upon any work that is performed at MSU.

28.   Nevertheless, even if one could glean from the statutory construction of § 7902 (c) that a safety council should assist the Secretary of Labor in applying § 941(b)(1) to the rest of the Federal workforce, § 941(b)(1) only authorizes the Secretary to "to make studies and investigations with respect to safety provisions and the causes and prevention of injuries in employments covered by this chapter" and "to cooperate with any agency of the United States or with any State agency engaged in similar work."  It does not authorize the safety council to create guidance in the way Federal contracts or contract-like instruments are procured.

29.   In short, a safety council established pursuant to § 7902 (c) – such as the Task Force established by President Biden – is authorized to advise the Secretary of Labor concerning the safety of Federal employees – not Federal contractors.  Cf. § 941(b)(1).  Therefore, the Task Force has no statutory authority to create safety guidelines for Federal contractors, let alone to issue vaccination requirements.  Thus, President Biden exceeded his statutory authority when he created the Task Force in Executive Order 13991 and again when he ordered Federal departments and agencies to incorporate the Task Force Guidance into contracts or contract-like instruments with Federal contractors in Executive Order 14042.

30.     Furthermore, Executive Order 14042 exceeds the President's authority under the Federal Property and Administrative Services Act (40 U.S.C. §§ 101, *et seq.*) ("FPASA").  Although the President is authorized to "prescribe policies and directives that the President considers necessary to carry out this subtitle," § 121 (a), "[t]he policies must be consistent with this subtitle."  Id.  Plaintiffs contend that Executive Order 14042 is inconsistent with FPASA and is void as a matter of law.

31.     The purpose of the FPASA is to provide the Federal Government with "an economical and efficient system" for the following activities:

> (1) Procuring and supplying property and nonpersonal services, and performing related functions including contracting, inspection, storage, issue, setting specifications, identification and classification, transportation and traffic management, establishment of pools or systems for transportation of Government personnel and property by motor vehicle within specific areas, management of public utility services, repairing and converting, establishment of inventory levels, establishment of forms and procedures, and representation before Federal and state regulatory bodies.
>
> (2) Using available property.
>
> (3) Disposing of surplus property.
>
> (4) Records management.

(40 U.S.C. § 101.)  Although Executive Order 14042 states that the safeguards imposed thereby "… will decrease the spread of COVID–19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government," EO 14042, at § 2, the President is categorically wrong.  Thus, the Plaintiffs allege, and will prove at trial, that Executive Order 14042 is neither economical nor efficient, and as such, that it exceeds the statutory authority vested in the President.

32. As of today, 205,482,061 citizens eighteen years of age or older have taken at least one dose of the COVID-19 vaccine; this represents 79.6 percent of the U.S. adult population. See https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (retrieved October 26, 2021). Likewise, as of today, 178,227,720 citizens eighteen years of age and older are fully vaccinated; this represents 69 percent of the U.S. adult population. See id.

33. From these statistics, we may deduce that the U.S. adult population is approximately 258,200,000 (although this figure is not precise). Thus, 178,227,720 adult citizens have had two doses, 27,254,341 have had only one dose, and approximately 52,700,000 have had no vaccine at all.

34. Notwithstanding these high vaccination rates, there have been 45,468,434 reported cases of COVID-19 in the United States. See id. Of these reported cases, 736,048 people have died. See id. Thus, the present death rate for COVID-19 is 1.62 percent.

35. So, by reverse implication, if a Federal contractor falls ill with the virus, there is a 98.38 percent chance that he/she will survive and return to work, with all other things being equal. However, if a Federal contractor is fired for not taking the vaccine, there is a zero percent chance that he/she will return to work.

36. The United States is currently experiencing a labor shortage, the likes of which we have not seen in decades. Therefore, the probability that a Federal contractor will be replaced quickly after being terminated is presumably less than what it would have been in recent years. Thus, Federal contractors and subcontractors are a

commodity; they do not need to be terminated when the demand for labor is already prodigious.

37.     Firing someone for not taking the vaccine would pose a greater risk of disrupting the Federal procurement system than if he or she were to remain employed, get sick with COVID-19, and miss a few weeks of work.   Plaintiffs intend to present expert testimony at trial to support this assertion.   Therefore, the President's directive in Executive Order 14042 is inconsistent with FPASA in that it necessarily will disrupt Federal procurement, instead of making it more economical or efficient.   Cf. § 101.

38.     The President has created a Task Force in violation of the stated purpose of the statute upon which he bases his authority.   The Task Force, in turn, has promulgated guidelines for which it has no statutory authority.   Moreover, the President's decision to use his authority under FPASA to impose these guidelines upon Federal contractors and subcontractors actually undermines the purposes of FPASA.   Therefore, the President has neither constitutional nor statutory authority to enact Executive Order 14042.

39.     Executive Order 14042 violates the Separation of Powers doctrine because it attempts to legislate instead of enforcing existing laws passed by Congress.

40.     Executive Order 14042 violates the Fourth Amendment in that it operates as a seizure, by requiring Plaintiffs to inject a substance into his or her body against their wills, on pains of losing their jobs.

41.     Executive Order 14042 violates the Due Process Clause of the Fifth Amendment because it operates to take liberty and/or property from the Plaintiffs by requiring that they take the COVID-19 vaccine against their will or lose their jobs without due process of law.

42. Executive Order 14042 violates the Ninth Amendment because it usurps upon rights of the Plaintiffs that are not enumerated in the Constitution.

43. Executive Order 14042 violates the Tenth Amendment because it exceeds the authority of the Federal government, usurping upon the rights of the States and the people to make decisions relating to personal health and safety.

44. Therefore, Executive Order 14042 is an unconstitutional attempt by the Executive to usurp the powers of the Congress (under the Separation of Powers doctrine), the States (under the Tenth Amendment), and the people (under the Fourth, Fifth, and Ninth Amendments).

## CAUSES OF ACTION
### Count I -- Declaratory Judgment

45. The preceding paragraphs are incorporated herein by reference.

46. Plaintiffs seek entry of an order pursuant to 28 U.S.C. §§ 2201–2202 declaring that Executive Order 14042 is unconstitutional.

47. Furthermore, Plaintiffs seek entry of an order pursuant to 28 U.S.C. §§ 2201–2202 declaring the IHL order of October 25, 2021, is unconstitutional.

### Count II -- Injunctive Relief

48. The preceding paragraphs are incorporated herein by reference.

49. Plaintiffs seek a preliminary injunction and permanent injunction from the Court. To this end, Plaintiffs seek to enjoin the Defendants from enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

50.    Plaintiffs' harm cannot be alleviated except by injunctive relief.  In fact, if injunctive relief is not granted, Plaintiffs will have their liberty and property taken from them by the Federal government and/or the State of Mississippi without due process of law in less than seven weeks.

51.    No other remedy is available at law.

## **REQUEST FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs requests that this Court:

a.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that the Safer Federal Workforce Task Force lacks the requisite statutory authority pursuant to 5 U.S.C. § 7902 and 33 U.S.C. § 941 to promulgate guidelines concerning vaccines to Federal contractors.

b.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 is inconsistent with the Federal Property and Administrative Services Act (40 U.S.C. §§ 101, *et seq*.)

c.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 lacks requisite antecedent constitutional or statutory basis, thereby violating the Separation of Powers doctrine, and issue a preliminary and permanent injunction restraining the Defendants from enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

d.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 is an unlawful seizure, thereby violating the Fourth Amendment, and issue a preliminary and permanent injunction restraining the Defendants from

enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

e.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 attempts to take the Plaintiffs' liberty and/or property without due process of law, thereby violating the Fifth Amendment, and issue a preliminary and permanent injunction restraining the Defendants from enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

f.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 infringes upon the unenumerated rights of the Plaintiffs, thereby violating the Ninth Amendment, and issue a preliminary and permanent injunction restraining the Defendants from enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

g.    Issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that Executive Order 14042 exceeds the power of the Federal government as enumerated by the Constitution, infringing upon the rights reserved to the States and the people, thereby violating the Tenth Amendment, and issue a preliminary and permanent injunction restraining the Defendants from enforcing Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

h.    IN THE ALTERNATIVE, issue a judgment, pursuant to 28 U.S.C. §§ 2201–2202, declaring that proof of natural immunity is a superior to vaccination, and as such,

and issue a preliminary and permanent injunction requiring the Defendants to treat proof of natural immunity as a medical exception to any vaccine mandate required by Executive Order 14042 or any other directive that is based upon Executive Order 14042, including, but not limited to, the IHL's October 25, 2021, order.

    i.    Grant such other relief as the Court finds just and proper.

Respectfully submitted on this the 27th day of October, 2021,

> T. KEITH HOLLIS, PH.D.,
> DENNIS SMITH, PH.D.
> TIMOTHY BODEN,
> and
> MARK MURPHY

> /s/ Matthew D. Wilson
> By:_____
> Matthew Wilson (MS 102344)
> PO Box 4814
> Mississippi State, MS 3976
> T: (662) 312-5039
> starkvillelawyer@gmail.com