IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

T. KEITH HOLLIS; et al.                                                                    PLAINTIFFS

v.                                                              CIVIL ACTION NO. 1:21-CV-163-GHD-RP

JOSEPH R. BIDEN, JR.; *et al.*                                                             DEFENDANTS

OPINION DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
DISMISSING ACTION FOR LACK OF STANDING

The Plaintiffs in this matter seek to enjoin the enforcement of Executive Order 14042, issued by President Biden on September 9, 2021, which requires federal contractors to comply with certain COVID-19-workplace safety protocols. On November 18, 2021, this Court heard testimony and argument relative to the Plaintiffs' motion for preliminary injunction [5]. Upon due consideration and as explained in more detail herein, the Court finds that the Plaintiffs have failed to demonstrate that they possess the requisite standing to maintain this lawsuit. Accordingly, the Court shall deny the Plaintiffs' motion for preliminary injunction and dismiss the Plaintiffs' claims for lack of standing.

**Factual Background**

1. *Executive Order 14042 and the Safer Federal Workforce Task Force Guidance*

On September 9, 2021, President Biden issued Executive Order 14042, which requires that certain parties who contract with the Federal Government "provide adequate COVID-19 safeguards for their workforce" and "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force …." *See* Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sept. 9, 2021). On September 24, 2021, pursuant to E.O. 14042, the Safer Federal Workforce Task Force issued its initial COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors. *See* initial Guidance, Doc. 1-1. This initial Guidance

was rescinded and superseded on November 10, 2021, when revised approved Guidance was issued. *See* 86 Fed. Reg. 63418-63425 (Nov. 16, 2021).

E.O. 14042 requires the incorporation of a clause regarding the prescribed COVID-19 vaccination requirements into certain types of federal contracts — new contracts, new solicitations for a contract, extensions or renewals of an existing contract, and exercises of an option on an existing contract — if they fall into one of the following categories:

(1) a procurement contract for services, construction, or a leasehold interest in real property;

(2) a contract for services covered by the Service Contract Act, 41 U.S.C. 6701 *et seq*.;

(3) a contract for concessions, including any concessions contract excluded by Department of Labor regulations at 29 CFR 4.133(b); or

(4) a contract entered into with the Federal government in connection with Federal property or lands and related to offering services for Federal employees, their dependents, or the general public.

E.O. 14042, § 5(a). The mandatory clause "shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by" the Task Force provided the guidance is approved by the Acting OMB Director, which has occurred. *Id*. at § 2(a); 86 Fed. Reg. at p. 63418. The mandatory clause also "shall apply to any workplace locations (as specified by the Task Force Guidance) in which an individual is working on or in connection with a Federal Government contract[.]" *Id*.

The current Task Force Guidance further mandates, *inter alia*, that "federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols: 1. COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation . . ." See 86 Fed. Reg. at p. 63418. The current deadline for covered contractors to ensure that all initially covered

contractor employees are fully vaccinated for COVID-19, unless the employee is entitled to an accommodation, is January 18, 2022. 86 Fed. Reg. at p. 63420.[1]

A "[c]overed contractor employee" is defined in the Guidance as "any full-time or part-time employee of a covered contractor working on or in connection with a covered contract or working at a covered contractor workplace." *Id*. at 63419. A covered contractor workplace is "a location controlled by a covered contractor at which any employee of a covered contractor working on or in connection with a covered contract is likely to be present during the period of performance for a covered contract." *Id*. After January 18, 2022, covered contractor employees not initially subject to the requirement "must be fully vaccinated by the first day of the period of performance on a newly awarded covered contract, and by the first day of the period of performance on an exercised option or extended or renewed contract when the clause has been incorporated into the covered contract." *Id*. at 63420. Covered contractor employees "who communicate to the covered contractor that they are not vaccinated against COVID-19 because of a disability (which includes medical conditions) or because of a sincerely held religious belief, practice, or observance" may be provided an accommodation by the covered contractor. *Id*.

E.O. 14042, however, contains important exceptions to the vaccine requirements. First, it does not apply to grants or "subcontracts solely for the provision of products." E.O. at § 5(b). It also does not apply to contracts or subcontracts whose value is less than or equal to the simplified acquisition threshold of $250,000, as defined in § 2.101 of the Federal Acquisition Regulation. *Id*. Moreover, although E.O. 14042 provides that "agencies are strongly encouraged, to the extent

---

[1] Under the Task Force Guidance, "people are considered fully vaccinated if they have received COVID-19 vaccines currently approved or authorized for emergency use by the FDA (Pfizer-BioNTech, Moderna, and Johnson & Johnson/Janssen COVID-19 vaccines) or COVID-19 vaccines that have been listed for emergency use by the World Health Organization (e.g., AstraZeneca/Oxford)." 86 Fed. Reg. at p. 63419.

permitted by law, to ensure that the safety protocols required under [existing] contracts . . . are consistent with" the Task Force Guidance, it includes no authority to force conforming changes to existing contracts. *Id*. at § 6(c). In essence, therefore, the Task Force Guidance sets forth a phase-in period for the new requirements to be added to federal contracts, and federal contractor employees are not subject to the new requirements until they become a covered contractor employee under a covered contract that includes the aforementioned clause.

### 2. *The State Defendants*

The Defendant Board of Trustees of State Institutions of Higher Learning ("IHL") is the constitutional governing body responsible for oversight of Mississippi's eight public institutions of higher learning, including Defendant Mississippi State University ("MSU"). MS Const. Art. 8, § 213A. On October 25, 2021, the IHL notified the public of its decision, in light of E.O. 14042, to amend a previous directive and require "[a]ll employees that are employed at public universities that are federal contractors or subcontractors . . . to receive the COVID-19 vaccination." IHL Directive, Doc. 3-2, at p. 3. The IHL's directive further states that "[t]he federal mandate applies to faculty, professional staff, support staff, and student workers at institutions that are federal contractors" and that "the motion passed by the Board . . . is a result of [E.O. 14042] and the Task Force guidance." *Id*., at 5. Subsequent to the issuance of this directive, the State of Mississippi, along with the states of Indiana and Louisiana, commenced a lawsuit in the Western District of Louisiana that seeks to enjoin enforcement of E.O. 14042, the identical relief the Plaintiffs seek in this matter.[2]

---

2    That case, pending as Civil Action No. 1:21-cv-3867 in the Western District of Louisiana, encompasses the relief sought by the Plaintiffs herein, and was filed on November 4, 2021. The Plaintiffs in that matter have filed a pending motion for injunctive relief [Doc. No. 10], seeking relief identical to the relief sought in the presently pending motion in this matter. The Court further notes that both IHL and MSU are state entities specifically created by the Mississippi state Constitution and by statute, and thus are effectively plaintiffs in the Western District of Louisiana action. MS Const. Art. 8, § 213A; Miss. Code Ann. § 37-113-1.

*3. The Plaintiffs and this Litigation*

The Plaintiffs are Mississippi residents employed by MSU - three of them are professors (two in the Chemistry Department, one in the Economics Department), one is a part-time lab director in the Chemistry Department, and one is a research associate in the Forestry Department. Doc. 3, at pp. 7-8. The Plaintiffs filed this suit on October 27, 2021, and amended their complaint on November 2, 2021. Docs. 1, 3. The Plaintiffs' Amended Complaint contains two counts, one seeking a declaratory judgment (Count I) and the other for injunctive relief (Count II). Doc. 3, at pp. 17-18. On November 2, the Plaintiffs filed the pending Application for Temporary Restraining Order and Preliminary Injunction. Doc. 5. The Plaintiffs' motion effectively asserts three grounds for relief: (1) E.O. 14042 is "ultra vires and unconstitutional;" (2) in issuing E.O. 14042 the President exceeded his authority under the Procurement Act, 40 U.S.C. § 101 *et seq.*; and (3) E.O. 14042 violates the Plaintiffs' constitutional rights. The Defendants have responded to the Plaintiffs' motion and the Court heard testimony and argument relative to the motion in a hearing conducted on November 18, 2021.

**Analysis**

*1. Requirements to Establish Standing*

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The doctrine developed to ensure that federal courts do not exceed their authority as it has been traditionally understood. *Id*. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 473 (1982); *Warth v. Seldin,* 422 U.S. 490, 498–499 (1975). In this way, "[t]he law of Article

5

III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches," and confines the federal courts to a properly judicial role. *Lujan,* 504 U.S. at 576–577. The Judicial Branch may not "accept for adjudication claims of constitutional violation ... where the claimant has not suffered cognizable injury." *Valley Forge Christian Coll.*, 454 U.S. at 474.

To that end, Article III of the Constitution requires a plaintiff to demonstrate standing before the court can decide the merits of a dispute. To make this showing, a plaintiff must establish an "injury in fact," a requirement that assures that the court will not pass upon abstract or potential problems but will adjudicate only concrete disputes between adversaries. The "irreducible constitutional minimum" of standing consists of three elements:

> (1) The plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) that is fairly traceable to the challenged conduct of the defendant; and
>
> (3) that is likely to be redressed by a favorable judicial decision.

*Lujan,* 504 U.S., at 560–561; *Friends of the Earth, Inc. v. Laidlaw Environ. Servs (TOC), Inc.,* 528 U.S. 167, 180–181 (2000). A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these three elements. *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Plaintiffs always have the burden to establish standing."). It is axiomatic that the plaintiff must "clearly ... allege facts demonstrating" each required element. *Warth,* 422 U.S. at 518.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560. As the Fifth Circuit has reiterated, a plaintiff

6

may seek injunctive relief with respect to threatened harm only if he "shows a sufficiently high degree of likelihood" he will be injured. *Frame v. City of Arlington,* 657 F.3d 215, 235 (5th Cir. 2011); see also *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

In *Lujan,* the Supreme Court made clear that any threatened future injury must be "real and immediate; not conjectural or hypothetical" in order to demonstrate Article III standing. *Lujan*, 504 U.S. at 559–61; *Friends of the Earth,* 528 U.S. at 180; *A.C.O.R.N. v. Fowler,* 178 F.3d 350, (5th Cir. 1999). Future injuries can provide the basis for Article III standing, but they "must be *certainly impending* to constitute injury in fact," and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting another source); *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) (holding that while the risk of future injury may be founded on a likely and credible chain of events, the injury must be "certainly impending."). Federal courts consistently deny standing when the claimed anticipated injury has not been shown to be more than an uncertain potentiality. *Barber*, 860 F.3d at 357; *Prestage Farms, Inc. v. Board of Sup'rs of Noxubee Cty., Miss.*, 205 F.3d 265, 268 (5th Cir. 2000).

## 2. The Plaintiffs' Standing Allegations

The Court finds that the Plaintiffs have not adequately demonstrated that they are currently or imminently will be subject to the vaccine requirement set forth in E.O. 14042 and the Task Force Guidance, and thus they have not shown that they have suffered an injury in fact. As explained above, in order to demonstrate that they possess standing to bring this action, the Plaintiffs must show, *inter alia*, that they are or imminently will be (1) "employee[s] of a covered

contractor" *and* (2) "working on or in connection with a covered contract or working at a covered contractor workplace." Task Force Guidance, 86 Fed. Reg. at p. 63419. But the Plaintiffs - in their Complaint, Amended Complaint, motion briefing, and at the November 18, 2021, hearing - failed to identify a single contract that potentially connects them to the federal contractor vaccine requirement. Instead, the Plaintiffs generally allege that much of MSU's "research is through Federal contracts with the Department of Agriculture and other agencies of the federal government," and that the Plaintiff Dr. Smith is working on a contract with NASA; that contract, however, is plainly excluded from the vaccine requirement, given that Dr. Smith testified during the hearing that the contract is for a product, rather than a service, and is for a total value below the simplified acquisition threshold of $250,000, which excludes it from the E.O.'s purview. *See* Nov. 18, 2021, Hearing Transcript at 17-18. As such, the Court finds that the Plaintiffs fall short of meeting their burden to demonstrate that any threatened future injury is "real and immediate; not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; Am. Compl. [Doc. 3] at 5.

In addition, to the extent that the Plaintiffs seek to rely on the IHL's directive, which states that MSU, among the other state institutions under the IHL's purview, "are likely to be recipients of" covered contracts, and that "IHL institutions have approximately 120 Federal Contracts having at least a present combined value of $271 million dollars," the Court finds that this reliance is misplaced and insufficient because there is no indication, certainly not based upon E.O. 14042 or the Task Force Guidance and certainly not sufficient to maintain standing to prosecute this action, that the Plaintiffs themselves will be deemed "covered contractor employees" under the Task Force's Guidance and subject to the Guidance's vaccine requirement. *See* IHL Guidance, Doc. 3-2. Likewise, to the extent that the IHL or MSU enact requirements more stringent than required under E.O. 14042 or the Task Force Guidance, the Court notes both that those entities are

8

effectively plaintiffs in the parallel litigation pending in the Western District of Louisiana and that the Plaintiffs have sought in this litigation to direct their focus solely on E.O. 14042 and the Task Force Guidance.[3]

The Court further notes, for the sake of argument, that even if the Plaintiffs are deemed covered contractor employees, they may be entitled to an accommodation or exception from the vaccination requirement. *See* Task Force Guidance, 86 Fed. Reg. at p. 63420 (setting forth accommodation categories). While the Plaintiffs have specifically disclaimed any intention to ever apply for such an accommodation, that stance does not detract from the fact that the Guidance specifically contemplates exemptions to the vaccine requirement. Indeed, two of the Plaintiffs allege that they have heart conditions and a third alleges a "health condition that makes him susceptible to anaphylactic response." Doc. 3, at pp. 7-8. Because the Plaintiffs have this additional avenue open to them, regardless of their stated intention to not seek an exemption should they be deemed covered employees, the Court finds that they are further removed from establishing an "actual or imminent" injury-in-fact caused by EO 14042, the Task Force Guidance, or the IHL Directive. *Lujan*, 504 U.S. at 560; Cf *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *5 (D.N.J. Nov. 8, 2021) (finding covered contractor employee possessed standing to challenge E.O. 14042 because employee was precluded from applying for exemption).

Because the Plaintiffs have failed to adequately show that they are or will become covered contractor employees under E.O. 14042 and the Task Force Guidance, and because they may in any event seek exemption from the vaccine requirement and have not done so, the Court cannot find that E.O. 14042 or the Task Force Guidance have caused Plaintiffs any actual or imminent

---

3     The Plaintiffs argued during the hearing that "[s]o the reality is, this is not a state action. This is a federal action and the state government, in this case the IHL, is complying with this [Executive] Order, and but for this Order, [the Plaintiffs] would not be facing an injury in fact." *See* Nov. 18, 2021, Hearing Transcript at 67.

injury that is fairly traceable to the Defendants' actions. *Lujan*, 504 U.S. at 560–61. The Plaintiffs' allegation of future injury under these circumstances is simply too conjectural and hypothetical to provide Article III standing at the present juncture; the Court is therefore without jurisdiction to address the merits of the Plaintiffs' claims and their claims shall be dismissed. *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) ("Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies" . . . [o]ne component of [which] is standing . . . ."); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Barber*, 860 F.3d at 352 (holding that there is no standing to support a preliminary injunction where there is "no evidence in the record of an injury-in-fact under [Plaintiffs'] theory"). In other words, none of the Plaintiffs has clearly shown an injury-in-fact, so none has standing. It follows that the Court is without jurisdiction to adjudicate the Plaintiffs' claims. *Hotze v. Burwell*, 784 F.3d 984, 991 (5th Cir. 2015); *Barber*, 860 F.3d at 352.[4]

## Conclusion

For the above-stated reasons, the Court finds that the Plaintiffs have not established that they have standing to bring this action. "The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is ... restricted to litigants who can show 'injury in fact' resulting from the action which they seek to have the court adjudicate." *Valley Forge*, 454 U.S. at 473. Under this current record, the plaintiffs have not shown an injury-in-fact caused by E.O. 14042, the Safer Federal Workforce Task Force Guidance, or the IHL directive that would empower this court to rule on the constitutionality of the subject vaccine mandate. The Court also again notes that the principles of judicial economy and efficiency

---

[4] In addition, the Court notes that, given the broader parallel action pending in the Western District of Louisiana, this ruling serves to avoid potentially conflicting rulings, conserves judicial resources, and promotes judicial economy.

dictate allowing the ongoing broader litigation in the Western District of Louisiana—in which the State of Mississippi is a named plaintiff suing the federal government over E.O. 14042—to run its course, as the Plaintiffs' claims in the case *sub judice* will be effectively adjudicated by the outcome of that litigation. Likewise, the Court does not foreclose the possibility that a future plaintiff may be able to show clear injury-in-fact that satisfies the "irreducible constitutional minimum of standing" regarding the mandate, but this Court must withhold judgment unless and until that plaintiff comes forward. *Lujan,* 504 U.S. at 560; *Barber*, 860 F.3d at 358. Accordingly, the Court lacks jurisdiction to adjudicate this matter. The Plaintiffs' suit is therefore dismissed without prejudice for lack of jurisdiction. See *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) ("when a complaint is dismissed for lack of jurisdiction, including lack of standing, it should be without prejudice").

An order in accordance with this opinion shall issue this day.

This, the 23rd day of November, 2021.

SENIOR U.S. DISTRICT JUDGE